```
                    X  FILED      ___ LODGED
                    ___ RECEIVED  ___ COPY

                        MAR 1 1 2003

                    CLERK U S DISTRICT COURT
                     DISTRICT OF ARIZONA
                    BY_____ DEPUTY
```

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 01-1062-PCT-MHM |
| Plaintiff, | |
| v. | **ORDER** |
| Lezmond Mitchell, | |
| Defendant. | |

Defendant Lezmond Mitchell has been indicted for carjacking resulting in death pursuant to 18 U.S.C. § 2119(3)(2000). The government has filed a notice of intent to seek the death penalty against Mitchell if he is convicted of carjacking ("Notice").

Mitchell has filed several motions challenging the constitutionality of the federal death penalty, specifically provisions of the Federal Death Penalty Act, 18 U.S.C. §§ 3591-98 (West 2000)(the "FDPA" or "the Act"). These motions are addressed herein.

I. Background

On November 21, 2001, a federal grand jury returned an indictment charging Mitchell with carjacking resulting in the deaths of two persons, among other offenses, and charging both him and a co-defendant, Jason Kinlicheenie, with armed robbery.[1] (Dkt. 1).

---

[1] The armed robbery occurred on October 31, 2001. The government alleges that the carjacking on October 28, 2001, was committed in order to obtain the truck owned by one of the carjacking victims for use in the armed robbery.

1   The government informed Mitchell's counsel that it was considering seeking the death
2   penalty pursuant to the FDPA if he was convicted of carjacking.
3       On July 2, 2002, a grand jury returned a superseding indictment against Mitchell,
4   Kinlicheenie, Johnny Orsinger and Gregory Nakai. (Dkt. 47). The superseding
5   indictment charged Mitchell and Orsinger with carjacking resulting in death, among other
6   offenses, and charged Mitchell, Kinlicheenie and Nakai with armed robbery.
7       On September 13, 2002, the government filed a "Notice of Intent to Seek the
8   Death Penalty" ("Notice") against Mitchell based solely on the carjacking count.[2] (Dkt.
9   87). The government set forth the aggravating factors it intends to prove if Mitchell is
10  convicted of carjacking in compliance with the requirements of the FDPA.
11      On October 1, 2002, Mitchell filed a "Motion to Declare Death Penalty
12  Unconstitutional and to Strike Notice of Intention to Seek Death Penalty." (Dkt. 95).
13  Mitchell predicated the filing of this motion on the absence of any requirement or
14  procedure for a grand jury to consider and charge aggravating factors in the indictment.
15      On November 19, 2002, a federal grand jury returned a second superseding
16  indictment against Mitchell and his co-defendants. While it charged the same offenses
17  against the defendants as the preceding indictment, it added the grand jury's "special
18  findings" of the statutory aggravating factors previously noticed by the government.
19  (Dkt. 130). Shortly thereafter, Mitchell filed a "Motion to Dismiss [the] Second
20  Superseding Indictment." (Dkt. 157).
21  II. Mitchell's Challenges to the Constitutionality of the FDPA
22      In his first motion, filed before the second superseding indictment was returned,
23  Mitchell argues that the FDPA is unconstitutional because it does not require the grand
24  jury to consider and charge aggravating factors as *elements* in the indictment, which he
25  maintains is required following the Supreme Court's decision in Ring v. Arizona, and its

---

[2]   Orsinger is not eligible for the death penalty under the FDPA because he was less than eighteen years old at the time of the carjacking. See 18 U.S.C. § 3591(a).

1  antecedents. He also contends that the FDPA's alleged constitutional deficiency cannot
2  be remedied short of legislative action. Mitchell further argues the FDPA is
3  unconstitutional because it "affirmatively directs that proof of aggravating factors are to
4  be introduced without regard to the Federal Rules of Evidence." (Dkt. 98 at 7-8).

5      In his motion to dismiss the second superseding indictment, Mitchell argues that
6  the government cannot unilaterally cure the FDPA's purported constitutional deficiencies
7  by setting forth statutory aggravating factors noticed by the government in the indictment
8  denominated as "special findings." He argues that the FDPA's failure to treat
9  aggravating factors as *elements*, to expressly specify procedures requiring the grand jury
10 to consider and find aggravating factors, and the structure of the FDPA, which suggests
11 that Congress intended the FDPA's aggravating factors to be considered *only* as
12 sentencing factors and not *elements*, precludes the government from attempting to cure its
13 alleged constitutional deficiencies. He further argues that "no section of the Federal
14 Criminal Code or other statute or rule of procedure" allows "the government to engage in
15 this process and to issue a document with this subsection" and that the procedure used by
16 the government lacks a "legal basis" and is "inherently improper" because it is "a fiction"
17 designed to remedy the FDPA's failure to treat aggravating factors as elements rather than
18 sentencing factors. (Dkt. 156 at 7).

19     Mitchell's motions are predicated on the Supreme Court's decision in Ring v.
20 Arizona, 536 U.S. 584, 122 S.Ct. 2428 (2002), issued June 24, 2002, as well as two of its
21 antecedents, Jones v. United States, 527 U.S. 373 (1999), and Apprendi v. New Jersey,
22 530 U.S. 466 (2000). In Ring, the Supreme Court held a portion of Arizona's capital
23 sentencing statute unconstitutional because it assigned sole responsibility for the
24 determination whether a statutory aggravating factor, the finding of which made a
25 defendant eligible for a death sentence, to the trial judge. Ring, 122 S.Ct. at ___. The
26 Supreme Court held that "[b]ecause Arizona's enumerated aggravating factors operate as
27 'the functional equivalent of an element of a greater offense,' Apprendi [530 U.S. at 494
28 n.19], the Sixth Amendment requires that they be found by a jury." Ring, 122 S. Ct. at

2443.

In Jones, the Supreme Court held that to avoid grave and doubtful constitutional concerns, the federal carjacking statute, 18 U.S.C. § 2119, must be construed as defining three different offenses, rather than a single offense for which punishment could be increased beyond the maximum for the underlying offense upon a showing to the court by a preponderance of the evidence of additional factual predicates. This was because the carjacking statute, if read to define a single crime, might violate the Constitution, because "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Ring, 122 S.Ct. at 2439 (quoting Jones, 526 U.S. at 243 n.6).

In Apprendi, the Supreme Court held that: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. It noted that, "[t]he judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury." Id. at 483, n.10. As characterized in Ring, Apprendi holds that:

> If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact--no matter how the State labels it--must be found by a jury beyond a reasonable doubt [because] "[a] defendant may not be 'expose[d] . . . to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'"

Ring, at 2439-40.

Before turning to Mitchell's challenges, a brief overview of the FDPA as it may be applicable to this case is warranted. If a defendant pleads guilty to or is found guilty of an offense that is punishable by death, a separate sentencing hearing is held before a jury.[3]

---

[3] The Court does not consider here the provision of § 3593(b)(3), which provides for the determination of the appropriate sentence by the court if a defendant

- 4 -

18 U.S.C. § 3593. At the sentencing hearing:

> information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. For the purposes of the preceding sentence, the fact that a victim, as defined in section 3510, attended or observed the trial shall not be construed to pose a danger of creating unfair prejudice, confusing the issues, or misleading the jury. The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death. The government shall open the argument. The defendant shall be permitted to reply. The government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a preponderance of the information.

18 U.S.C. § 3593(c). This provision is sometimes referred to as the FDPA's "relaxed evidentiary standard."

At the sentencing hearing, the jury must unanimously make two findings beyond a reasonable doubt before a defendant is eligible for a sentence of death. First, the jury must unanimously find beyond a reasonable doubt that the defendant:

> (A) intentionally killed the victim;
>
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used ... and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person ... such that

---

moves for sentencing by the court and the attorney for the government agrees.

- 5 -

1     participation in the act constituted a reckless disregard for human life and
2     the victim died as a direct result of the act .... [and]
    it is determined that imposition of a sentence of death is justified.

3 18 U.S.C. § 3591(a)(2). Second, the jury must unanimously find at least one statutory
4 aggravating factor, previously noticed by the government, beyond a reasonable doubt
5 under 18 U.S.C. § 3592. Only if a jury unanimously finds one of the "mental culpability"
6 factors under § 3591(a)(2) and at least one statutory aggravating factor under § 3592
7 beyond a reasonable doubt, does a defendant become eligible for a death sentence. That
8 is, a jury does not weigh aggravating and mitigating factors to determine whether to
9 recommend a death sentence unless it first unanimously finds one of the mental
10 culpability factors and at least one statutory aggravating factor beyond a reasonable
11 doubt. See 18 U.S.C. § 3593. Moreover, only the finding of a *statutory* aggravating
12 factor previously noticed by the government is sufficient to make a defendant "death
13 eligible," *non*-statutory aggravating factors are not considered by the jury unless and until
14 it first finds a mental culpability factor and a statutory aggravating factor beyond a
15 reasonable doubt. Id.

16                           **Discussion**

17        Mitchell contends, based on Ring, Jones and Apprendi, that aggravating factors
18 under the FDPA are "effectively elements" that must be considered by the grand jury,
19 charged in the indictment and proven beyond a reasonable doubt to a petit jury. While
20 there is no dispute that the FDPA requires the government to prove the existence of any
21 aggravating factor beyond a reasonable doubt at trial, Mitchell contends that the absence
22 in the FDPA of any requirement that the grand jury consider and charge any mental
23 culpability and statutory aggravating factors in the indictment renders the Act
24 unconstitutional. He further contends that Congress manifested the intention that
25 aggravating factors under the FDPA be considered *solely* as sentencing factors rather than
26 as elements because it listed the FDPA's aggravating factors in a section entitled "Death
27 Sentence." (Dkt. 157 at 5). He argues that this purported legislative intent precludes the
28 government from attempting to treat aggravating factors under the FDPA as elements by

charging them in the indictment. Although not precisely articulated, Mitchell also seems to contend that because the alleged mental culpability and statutory aggravating factors are facts not reflected by the jury's finding of guilt, those factors must be treated as elements of a new substantive offense, e.g., capital carjacking resulting in death, but that the FDPA treats these factors as sentencing factors rather than elements of a new substantive offense, rendering it unconstitutional.[4] Finally, Mitchell argues the FDPA is unconstitutional because § 3593(c) "affirmatively directs that proof of aggravating factors are to be introduced without regard to the Federal Rules of Evidence."

To date, neither the Supreme Court nor any Court of Appeals has held that the Indictment Clause of the Fifth Amendment requires aggravating factors, which if found make a defendant eligible for a death sentence, to be considered by the grand jury and charged in an indictment. The issue was not present in Ring or Apprendi, which were state prosecutions, because the Fifth Amendment's Indictment Clause has not been held applicable to the states pursuant to the Fourteenth Amendment. Nevertheless, in light of Jones, and the implications of Ring and Apprendi, federal courts have assumed or acknowledged that such a requirement may well now apply to federal capital prosecutions. See United States v. Quinones, 313 F.3d 49, 53 n.1 (2d Cir. 2002)("On August 22, 2002, the grand jury returned a further superseding indictment that added no new charges or defendants but, instead, set forth the statutory aggravating factors that, pursuant to Ring v. Arizona, — U.S. —, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), must now be alleged in the indictment and found by a jury in capital cases"); United States v. Sampson, — F.Supp.2d —, 2003 WL 352416 at *5 (D. Mass. Feb. 18, 2003); United

---

[4] Or as one district court put it, "[t]he thrust of Defendant's argument is that Ring, Apprendi, and Jones mandate that any fact that must be found in order for the Defendant to receive an increased punishment beyond that authorized by the jury verdict constitutes an element of a new greater substantive offense" and that the FDPA is unconstitutional "because the statutory aggravating factors alleged in this case necessary for imposition of capital punishment are sentencing factors, rather than elements, under the FDPA." United States v. Regan, 221 F.Supp.2d 672, 673-74 (E.D. Va. 2002).

States v. Johnson, — F.Supp.2d —, 2003 WL 43363 *8-9 (N.D. Iowa Jan. 7, 2003); United States v. Matthews, — F.Supp.2d —, 2002 WL 31995520 at *3 (N.D.N.Y. Dec. 31, 2002); United States v. Denis, — F.Supp.2d —, 2002 WL 31730863 at *3 (S.D. Fla. Dec. 3, 2002); United States v. Lentz, 225 F.Supp.2d 672, 680 (E.D. Va. 2002)("in light of Jones' requirement that 'any fact . . . that increases the maximum penalty for a crime must be charged in an indictment . . .,' it appears to be a foregone conclusion that aggravating factors that are essential to the imposition of the death penalty must appear in the indictment"); United States v. Regan, 221 F.Supp.2d 672, 674 (E.D. Va. 2002); United States v. Church, 218 F.Supp.2d 813, 815 (W.D. Va. 2002)(adhering to previous ruling that Ring did not require aggravating factors to be charged in the indictment but acknowledging that "the question is not free from doubt" and holding that the government was not foreclosed from doing so); United States v. Fell, 217 F.Supp.2d 469, 483 (D.Vt. 2002)("the clear implication [of Ring], resting as it does on Jones, is that in a federal capital case the Fifth Amendment right to a grand jury indictment will apply"); cf. United States v. Bernard, 299 F.3d 467, 488 (5th Cir. 2002)(on collateral review the absence of aggravating factors in the indictment was not plain error because "Ring did not hold that indictments in capital cases must allege aggravating and mental state factors" and the evidence of aggravating factors was overwhelming).

Despite the uncertainty regarding whether the Indictment Clause of the Fifth Amendment requires the mental culpability and statutory aggravating factors under the FDPA to be considered by the grand jury and charged in an indictment, the government has increasingly obtained superseding indictments in which both mental culpability and statutory aggravating factors are charged. See Sampson, 2003 WL 352416 at *1; Johnson, 2003 WL 43363 *2; Matthews, 2002 WL 31995520 at *1; Denis, 2002 WL 31730863 at *3; Lentz, 225 F.Supp.2d at 674; Regan, 221 F.Supp.2d at 673; Church, 218 F.Supp.2d at 814; Fell, 217 F.Supp.2d at 473. Capital defendants have in turn challenged both the ability of the government to obtain superseding indictments that charge mental culpability and statutory aggravating factors to satisfy Ring and Jones, and the process by

which the government has done so. See id. As a result, a number of district courts have considered arguments similar or identical to those raised by Mitchell in this case, but have uniformly rejected such "Ring-based" challenges.[5] See e.g., Sampson, 2003 WL 352416 at *2; Johnson, 2003 WL 43363 at *8-9; Matthews, 2002 WL 31995520 at *6-7; Lentz, 225 F.Supp.2d at 675-76; Regan, 221 F.Supp.2d at 674; Fell, 217 F.Supp.2d at 483-84. Thus, courts have uniformly rejected the contention that under Ring and its antecedents, the FDPA's mental culpability and statutory aggravating factors constitute elements of a new substantive offense.[6] See e.g., Sampson, 2003 WL 352416 at *3, 5; Johnson, 2003 WL 43363 at *19; Lentz, 225 F.Supp. at 679; Regan, 221 F.Supp. at 673. This is because while Ring alluded to Arizona's statutory aggravating factors as "the functional equivalent of elements of a greater offense," it did so only in a specific constitutional sense concerned only with the *procedure* by which such facts are found, *i.e.*, the identity of the factfinder. Id.

Furthermore, contrary to Mitchell's contention, the absence of an explicit requirement that an indictment charge the mental culpability and statutory aggravating factors that the government intends to prove does not render the FDPA unconstitutional. See e.g., Matthews, 2002 WL 31995520 at *7; Lentz, 225 F.Supp.2d at 681. Nor does the absence of such explicit requirement preclude the government from constitutionally alleging the mental culpability and statutory aggravating factors in an indictment. Matthews, 2002 WL 31995520 at *7 ("That the Death Penalty Statutes do not expressly state that the aggravating factors are elements of the offense to be charged by the Grand Jury does not mean that they run afoul of the constitution . . . There is nothing in the

---

[5]   Some of the cases cited address provisions of 21 U.S.C. § 848. However, the procedures under 21 U.S.C. § 848 are virtually identical to those under the FDPA, 18 U.S.C. §§ 3591-98. See United States v. Matthews, — F.Supp.2d —, 2002 WL 31995520 at * 2 (N.D.N.Y. Dec. 31, 2002).

[6]   Only *statutory* aggravating factors are relevant here because it is the finding of a noticed statutory aggravating factor, in conjunction with the finding of a mental culpability factor, that makes a defendant "death eligible."

1    Death Penalty Statutes or elsewhere that precludes the government from alleging the
2    aggravating factors in the indictment"); Sampson, 2003 WL 352416 at *5; Lentz, 225
3    F.Supp.2d at 675 ("The Government's inclusion of the *mens rea* requirements and
4    statutory aggravating factors in the superseding indictment remedy rather than exacerbate
5    the constitutional concerns under the Fifth Amendment"); Regan, 221 F.Supp.2d at 680
6    (same); Church, 218 F.Supp.2d at 815; Fell, 217 F.Supp.2d at 484 ("That the FDPA is
7    silent concerning the grand jury's role in charging death-eligibility factors does not
8    suggest that Congress intended to forbid grand jury participation or to exclude these
9    factors from an indictment"). As noted in Fell, Congress provided for grand jury
10   involvement in charging capital offenses in Fed.R.Crim.P. 7, which provides that "[a]n
11   offense which may be punished by death shall be prosecuted by indictment," which "shall
12   be a plain, concise and definite written statement of the essential facts constituting the
13   offense charged." Fell, 217 F.Supp.2d at 484 (quoting Fed.R.Crim.P. 7(a) & (c)). As
14   Fell further observes, "[i]n line with the holdings of Jones, Apprendi and Ring, the
15   essential facts of a capital offense must include the mental culpability and statutory
16   aggravating factors specified in the FDPA." Id.; see also Johnson, 2003 WL 43363 at
17   *16; Lentz, 225 F.Supp.2d at 681; Regan, 221 F.Supp.2d at 680.
18        Courts have also concluded that nothing about the language of the FDPA as
19   written, its structure, or its legislative history precludes consideration by the grand jury of
20   mental culpability or statutory aggravating factors or precludes the charging of mental
21   culpability and statutory aggravating factors in an indictment. See Johnson, 2003 WL
22   43363 at *16-18; Matthews, 2002 WL 31995520 at *7; Church, 218 F.Supp.2d at 815;
23   Fell, 217 F.Supp.2d at 484.
24        This Court agrees with the other district courts that have considered Ring-based
25   challenges similar to those raised by Mitchell in this case. It therefore concludes that
26   Ring and its antecedents do not render the FDPA unconstitutional on those grounds.
27        Finally, Mitchell challenges the constitutionality of § 3593(c) of the FDPA
28   because it affirmatively directs that proof of aggravating factors be introduced without

- 10 -

1  regard to the Federal Rules of Evidence. Mitchell contends this relaxed evidentiary
2  standard violates his due process, confrontation and cross-examination rights under the
3  Fifth and Sixth Amendments.
4       A number of courts have considered similar challenges to § 3593(c). See Johnson,
5  2003 WL 43363 at *19; Matthews, 2002 WL 31995520 at *2; Lentz, 225 F.Supp.2d at
6  682-84; Fell, 217 F.Supp.2d at 485-89. However, with the exception of Fell, they have
7  rejected such challenges. See Johnson, 2003 WL 43363 at *19-20; Matthews, 2002 WL
8  31995520 at *2-6; Lentz, 225 F.Supp.2d at 675, 682-84; Regan, 221 F.Supp.2d at 674,
9  682-83.
10      In Fell, the court concluded that "given the Supreme Court's concern for
11 heightened reliability and procedural safeguards in capital cases . . . and its holding that
12 facts such as the FDPA's eligibility factors are the functional equivalents of elements of a
13 greater offense," the FDPA's relaxed evidentiary standard for determination of death
14 eligibility factors does not satisfy the demands of due process and the Sixth Amendment
15 rights of confrontation and cross-examination." 217 F. Supp.2d at 485. In considering
16 the issue, other courts note that the Federal Rules of Evidence are not constitutionally
17 mandated. See e.g., Lentz, 225 F.Supp.2d at 682; Regan, 221 F.Supp.2d at 682. Further,
18 they have recognized Congress' power to prescribe what evidence is to be received in
19 courts of the United States. Id. These courts have recognized that § 3593(c)'s standard is
20 consistent with Supreme Court precedent with respect to relaxed standards governing the
21 admissibility of evidence at capital sentencing hearings. Johnson, 2003 WL 43363 at
22 *19-20; Matthews, 2002 WL 31995520 at *5-6; Lentz, 225 F.Supp.2d at 683; Regan, 221
23 F.Supp. at 682. Moreover, they have recognized that a court has the obligation and the
24 authority to exclude "information" if it finds such information unfairly prejudicial. See
25 Johnson, 2003 WL 43363 at *20; Matthews, 2002 WL 31995520 at *5; Lentz, 225
26 F.Supp.2d at 684; Regan, 221 F.Supp.2d at 682-83. Indeed, the Fifth Circuit observed
27 that:
28      The relevancy standard enunciated in § 3593(c) actually excludes a greater

- 11 -

amount of prejudicial information than the Federal Rules of Evidence because it permits the judge to exclude information where the 'probative value is outweighed by the danger of creating unfair prejudice' rather than 'substantially outweighed.'

United States v. Jones, 132 F.3d 232, 241 n.7 (5th Cir. 1998)(citing FRE 403), aff'd sub nom. Jones v. United States, 527 U.S. 373 (1999); see also United States v. Allen, 247 F.3d 741(8th Cir. 2001)("not only does the statute protect a defendant from both irrelevant information and overly prejudicial information, the relaxed evidentiary standard also works to a defendant's advantage in helping to prove mitigating factors and to disprove aggravating factors"), vac'd and remanded, — U.S. —, 122 S.Ct. 2653 (2002) (for further consideration in light of Ring). Finally, § 3593(c) only supplants the rules of evidence, it does not purport to supplant constitutional standards. Johnson, 2003 WL 43363 at *20; Matthews, 2002 WL 31995520 at *5. Thus, a defendant has the opportunity to confront and rebut any information presented under the relaxed evidentiary standard, while the court "retains the authority under the statute to impose upon the parties any standards of admissibility *or fairness* dictated by the Fifth and Sixth Amendments." Johnson, 2003 WL 43363 at *20; see also Matthews, 2002 WL 31995520 at *5 (same); Lentz, 225 F.Supp.2d at 684 (same).

For the reasons recognized by the majority of courts to consider the issue, this Court is persuaded that the standard articulated in § 3593(c) does not violate a defendant's constitutional rights. Accordingly, Mitchell's challenge to the constitutionality of § 3593(c) will be denied.

III. Motion for Grand Jury Transcripts

Mitchell has filed a "Motion to Disclose Grand Jury Transcripts," in which he seeks the complete grand jury transcripts for the second superseding proceedings in order to challenge the process by which the grand jury returned that indictment.[7] (Dkt. 156 at

---

[7] The parties each submitted supplemental briefing in connection with this motion. For purposes of this Order, the supplemental briefs are treated as though included with the original briefing.

1-2). Mitchell states that he believes that "the government has utilized a procedure and process of its own choosing and of its own creation in order to treat sentencing enhancements as elements, all in an effort to attempt to address the issues and difficulties inherent in the Ring decision." (Dkt. 156 at 2). Thus, Mitchell seeks the complete grand jury transcripts in aid of a challenge to the second superseding indictment.

In response, the government acknowledges that Mitchell is entitled to the testimonial portions of the transcripts and that those portions have been provided to him. However, the government argues that Mitchell has not established a "particularized need" for the remaining portions of the transcripts.

Fed.R.Crim.P. 6(e)(2) generally precludes discovery of grand jury transcripts. However, two exceptions provide a criminal defendant with access to the transcripts (1) when "so directed by a court" in a judicial proceeding based on a "particularized need" that outweighs the grand jury policy of secrecy or (2) when "permitted by a court" based on a motion to dismiss the indictment for misconduct before the grand jury. Fed.R.Crim.P. 6(e)(3)(C); see United States v. Procter & Gamble Co., 356 U.S. 677, 683 (1958); see also United States v. Perez, 67 F.3d 1371, 1381 (9th Cir. 1995)("A party seeking disclosure of the grand jury transcripts must demonstrate a 'particularized need' for the disclosure"), vacated in part on other grounds, 116 F.3d 840 (1997); United States v. Fowlie, 24 F.3d 1059, 1065-66 (9th Cir. 1994)(Fed.R.Crim.P. 6(e)(3)(C)(ii) permits "disclosure upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury"). The burden is on the defendant to show that disclosure of grand jury transcripts is appropriate. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959). "The decision to release or not release grand jury transcripts is reviewed for abuse of discretion." United States v. Plummer, 941 F.2d 799, 806 (9th Cir. 1991).

Mitchell contends that he has demonstrated a particularized need for the complete grand jury transcripts because it may provide a basis to challenge the second superseding indictment. Mere speculation that grand jury transcripts may afford a basis to challenge

1  an indictment does not constitute "particularized need." <u>United States v. Walczak</u>, 783
2  F.2d 852, 857 (9th Cir.1986). Mitchell's request is premised on speculation that the
3  transcripts may reveal a basis to challenge the second superseding indictment.
4  Accordingly, Mitchell's motion for the complete grand jury transcripts will be denied.
5  <u>IV. Motion to Strike Notice of Intention to Seek Death Penalty</u>
6        On December 13, 2002, Mitchell filed a "Motion to Strike Notice of Intention to
7  Seek Death Penalty," for lack of jurisdiction and statutory authority to impose the death
8  penalty, under 18 U.S.C. §§ 1151 & 3598 and Fed.R.Crim.P. 12(b). (Dkt. 158). Mitchell
9  incorporates the arguments set forth in his previous motion to declare the FDPA
10 unconstitutional and to strike the Notice.
11       Mitchell argues that 18 U.S.C. § 3598 precludes the imposition of the death
12 penalty against him because he is a Native American accused of a capital offense against
13 other Native Americans in Indian Country. Section 3598 of the FDPA provides that:

> Notwithstanding sections 1152 and 1153, no person subject to the criminal jurisdiction of an Indian tribal government shall be subject to a capital sentence under this chapter for any offense the Federal jurisdiction for which is predicated *solely* on Indian country (as defined in section 1151 of this title)[8] and which has occurred within the boundaries of Indian country, *unless* the governing body of the tribe has elected that this chapter have effect over land and persons subject to its criminal jurisdiction.

18 U.S.C. § 3598 (emphasis added).

      Section 1152 of title 18 provides that the "general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States . . . shall extend to Indian Country" *except* as otherwise expressly provided by law. Section 1153(a) of title 18 provides that:

> Any Indian who commits against the person or property of another Indian . . . any of the following offenses, namely, murder, manslaughter, kidnaping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, arson,

---

[8]   "Indian country" is defined as " . . . all land within the limits of an Indian reservation under the jurisdiction of the United States . . ." 18 U.S.C. § 1151.

- 14 -

> burglary, robbery, and a felony under section 661 of this title within Indian country, *shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.*

(Emphasis added). Thus, under § 1153, an Indian is subject to the same penalties as any other person for the offenses enumerated.

Mitchell argues that despite the provisions of §§ 1152 and 1153, § 3598 precludes the federal government from seeking a death sentence against him for carjacking because the Navajo Nation, of which he is a member, has not elected that the FDPA apply to its members. In opposition, the government argues that § 3598 only precludes the government from seeking a death sentence pursuant to the FDPA for an offense for which federal jurisdiction is predicated solely on the situs of the offense in Indian Country, unless a tribe's governing body has elected that the FDPA apply to persons subject to the tribe's criminal jurisdiction.

Neither party has cited legislative history or case authority construing § 3598 and the Court has found none. While neither of the parties' construction of § 3598 is wholly implausible, the Court concludes that the language of § 3598 manifests the intent that the applicability of the FDPA to tribal members be conditioned upon the situs of the offense when the sole basis for federal jurisdiction is the situs of the offense in Indian Country. So construed, section 3598 respects tribal sovereignty. It thus provides that when the *only* basis for federal jurisdiction is the situs of the offense, the government is precluded from seeking a death sentence unless the tribe has opted into application of the FDPA, without otherwise precluding the government from punishing similar offenses in similar ways when federal jurisdiction is not predicated on the situs of the offense in Indian Country.

In this case, the government seeks the death penalty in connection with only one offense, carjacking resulting in death, 18 U.S.C.§ 2119(3). Carjacking resulting in death is a general jurisdiction offense, *i.e.*, an offense for which federal jurisdiction is *not* predicated on the situs of the offense. Because carjacking resulting in death is a general jurisdiction offense, section 3598 does not apply and the government may seek a death

- 15 -

sentence against members of tribes without respect to whether a tribe has chosen to make the FDPA effective against tribal members for offenses for which federal jurisdiction is predicated *solely* on the the situs of the offense. Thus, section 3598 does not preclude the government from seeking a death sentence against Mitchell for the general jurisdiction offense of carjacking resulting in death. Accordingly, Mitchell's motion to strike the Notice will be denied.

The Court being fully advised,

**IT IS ORDERED** denying Mitchell's motion to declare the Federal Death Penalty Act, 18 U.S.C. §§ 3591-98 unconstitutional and denying his motion to strike the Notice of Intent to Seek the Death Penalty. (Dkt. 98-1 & 98-2).

**IT IS FURTHER ORDERED** denying Mitchell's motion to dismiss the second superceding indictment. (Dkt. 157).

**IT IS FURTHER ORDERED** denying Mitchell's motion to disclose grand jury transcripts. (Dkt. 156).

**IT IS FURTHER ORDERED** denying Mitchell's motion to strike the notice of intention to seek death penalty. (Dkt. 158).

DATED this 11th day of March, 2003.

MARY H. MURGUIA
United States District Judge