CUAUTEMOC ORTEGA (Cal. Bar No. 257443)
Interim Federal Public Defender
JONATHAN C. AMINOFF (Cal. Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (Cal. Bar No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant
Lezmond Charles Mitchell

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. CR 01-01062-DGC |
| Plaintiff, | (Case No. CV 09-08089-DGC) |
| | **DEATH-PENALTY CASE** |
| v. | **EXECUTION SET FOR AUGUST 26, 2020** |
| | Honorable David G. Campbell United States District Judge |
| Lezmond Charles Mitchell, | **MOTION TO STRIKE EXECUTION WARRANT AND VACATE EXECUTION DATE AND TO ENJOIN ANY FURTHER VIOLATION OF THIS COURT'S JANUARY 8, 2003 JUDGMENT AND COMMITMENT ORDER; STAY OF EXECUTION PENDING RESOLUTION OF THIS MOTION** |
| Defendant. | |
| | **Oral Argument Requested** |

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. CR 01-01062-DGC |
| Plaintiff, | (Case No. CV 09-08089-DGC) |
| v. | **EXECUTION SET FOR AUGUST 26, 2020**<br><br>Honorable David G. Campbell<br>United States District Judge |
| Lezmond Charles Mitchell, | **MOTION TO STRIKE EXECUTION WARRANT AND VACATE EXECUTION DATE AND TO ENJOIN ANY FURTHER VIOLATION OF THIS COURT'S JANUARY 8, 2003 JUDGMENT AND COMMITMENT ORDER; STAY OF EXECUTION PENDING RESOLUTION OF THIS MOTION** |
| Defendant. | **Oral Argument Requested** |

Movant Lezmond Charles Mitchell moves the Court for an order striking his execution warrant and barring his August 26, 2020 execution.  This motion is based on the attached memorandum of points and authorities, the exhibits submitted therewith, and all the files and records of this case.

Respectfully submitted,

Dated: August 6, 2020

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT PROCEDURAL HISTORY .............................................................. 1

III. THIS COURT HAS JURISDICTION TO DECIDE THIS MOTION ....................... 3

IV. THE NOTICED EXECUTION OF MITCHELL VIOLATES THE FDPA AND
     THIS COURT'S JUDGMENT ................................................................................ 3

     A.    Law governing federal death sentences ....................................................... 3

     B.    Mitchell's warrant fails to comply with the FDPA and this Court's
           judgment because it specifies a manner of execution different than
           prescribed by Arizona law. ......................................................................... 4

           1.    The FDPA requires that federal executions follow state
                 procedures. ...................................................................................... 4

           2.    The manner of execution set forth in the BOP protocol is
                 inconsistent with that prescribed by Arizona law. ............................. 9

V. CONCLUSION ........................................................................................................ 13

CERTIFICATE OF SERVICE ..................................................................................... 14

i

# TABLE OF AUTHORITIES

Page(s)

1

2

3

**Federal Cases**

*Advocate Health Care Network v. Stapleton*,
    137 S. Ct. 1652 (2017)............................................................... 5

*Bourgeois v. Barr*,
    2020 WL 3492763 (U.S. June 29, 2020)................................... 6

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
    955 F.3d 106 (D.C. Cir. 2020)............................................*passim*

*First Amendment Coalition of Arizona, Inc. v. Ryan*,
    D. Ariz. Case No. 2:14-cv-01447-NVW ................................... 9

*Mitchell v. United States*,
    958 F.3d 775 (9th Cir. 2020) .................................................... 1

*Mitchell v. United States*,
    Ninth Cir. Case No. 18-17031 ................................................... 2

*Root v. Woolworth*,
    150 U.S. 401 (1893)................................................................... 3

*United States v. Hammer*,
    121 F. Supp. 2d 794 (M.D. Pa. 2000)................................... 3, 6

**Federal and State Statutes**

18 U.S.C. § 3566 ........................................................................ 3, 4

18 U.S.C. § 3592 ........................................................................... 7

18 U.S.C. § 3596 ..................................................................... 4, 7, 8

18 U.S.C. § 3597 ........................................................................... 7

21 U.S.C. § 848 ............................................................................. 3

A.R.S. § 13-758 ........................................................................... 12

A.R.S. § 13-759 ........................................................................... 12

A.R.S. § 13-757 ............................................................................. 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

28 C.F.R. § 26.3 ................................................................................................. 2, 3, 4, 12

28 C.F.R. § 26.4 ....................................................................................................... 12

## MEMORANDUM OF POINTS AND AUTHORITIES
## I.  INTRODUCTION

The federal government "circumvented" the intended authority of the Navajo Nation to opt out of the death penalty, when it pursued this punishment against Lezmond Mitchell against the wishes of Navajo tribal leadership, members of the victims' family, and the local United States Attorney's Office.  *Mitchell v. United States*, 958 F.3d 775, 793 (9th Cir. 2020) (Christen, J., conc.).  Now it similarly seeks to circumvent this Court's authority.  When the Court sentenced Mitchell to death, it ordered that his execution was to be implemented in the manner prescribed by the detailed and robust laws of the State of Arizona.  The Government, however, has scheduled Mitchell's execution for August 26, 2020, and stated that they intend to kill Mitchell in accordance with a recently created, and still evolving, lethal injection protocol that is still under judicial review.

Mitchell respectfully requests that the Court vacate Mitchell's August 26, 2020 execution date, and enjoin the Government from attempting to execute Mitchell in a manner that violates this Court's judgment.

## II.  RELEVANT PROCEDURAL HISTORY

On May 20, 2003, a unanimous jury recommended that this Court sentence Mitchell to death. On September 10, 2003, the Government submitted a proposed judgment and order which stated: "When the sentence is to be implemented, the Attorney General shall release the Defendant to the custody of the United States Marshal, who shall supervise the implementation of the sentence in the manner prescribed by law of the State of Arizona." Dkt. No. 411 at 4:1-3. On September 15, 2003, this Court formally sentenced Mitchell to death and issued its judgment, which included the following directive:

1

> Pursuant to the Federal Death Penalty Act of 1994, specifically, Section 3594 of Title 18 of the United States Code, pursuant to the jury's special findings returned on May 20, 2003, and pursuant to the jury's unanimous vote recommending that the defendant be sentenced to death, IT IS THE JUDGMENT OF THIS COURT THAT the defendant, Lezmond Charles Mitchell, be sentenced to death on Count Two of the Second Superseding Indictment. The judgment and death sentence on Count Two is supported by independent verdicts with regard to each victim. Furthermore, pursuant to Title 18, Section 3596 of the United States Code, the defendant is hereby committed to the custody of the Attorney General of the United States until exhaustion of the procedures for appeal of the judgment and conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the defendant to the custody of the United States Marshal, who shall supervise implementation of the sentence *in the manner prescribed by the law of the State of Arizona.*

Dkt. No. 425 (emphasis added). This language mirrored language submitted by the Government in its Proposed Judgment and Order (Dkt. No. 411), and the Government did not object to this language at the formal sentencing hearing or in any later motion. The Court subsequently amended its judgment on January 8, 2004, but left the above portion of the order unchanged. Dkt. No. 466.

On July 25, 2019, T.J. Watson, the warden of the Federal Correctional Complex at Terre Haute, Indiana ("USP Terre Haute") served Mitchell with a letter indicating that pursuant to 28 C.F.R. § 26.3(a)(1), the Director of the Bureau of Prisons ("BOP") had set December 11, 2019 as Mitchell's execution date. The same day, in the four pending federal lethal injection lawsuits in the District Court for the District of Columbia, the Government filed a notice indicating that it had adopted a revised lethal injection protocol. (Ex. A, BOP Addendum.) On July 31, 2019, Watson served an amended letter on Mitchell, correcting the name of the sentencing judge that was misstated on the prior version.

On October 4, 2019, Mitchell's execution was stayed by the Ninth Circuit Court of Appeals, pending its consideration of Mitchell's appeal of this Court's denial of his Rule 60(b) motion. *Mitchell v. United States*, Ninth Cir. Case No. 18-17031, Dkt. 26

(Oct. 4, 2019).  The Ninth Circuit ultimately affirmed this Court's denial.  *Id.*, Dkt. 37 (Apr. 3, 2020).

Before the Ninth Circuit's mandate issued, on July 29, 2020, Watson served Mitchell with a letter indicating that pursuant to 28 C.F.R. § 26.3(a)(1), the BOP had set an execution date for Mitchell of August 26, 2020.  (Ex. B, July 29, 2020 Letter.)

## III.  THIS COURT HAS JURISDICTION TO DECIDE THIS MOTION

This Court has jurisdiction to enforce its judgment.  *Root v. Woolworth*, 150 U.S. 401, 412 (1893) ("Where the court possesses jurisdiction to make a decree, it possesses the power to enforce its execution."); *see also United States v. Hammer*, 121 F. Supp. 2d 794, 797 (M.D. Pa. 2000) ("This court [that imposed the death sentence] is the appropriate forum for considering all claims of Mr. Hammer regarding the details of the scheduled execution in Indiana.").

## IV.  THE NOTICED EXECUTION OF MITCHELL VIOLATES THE FDPA AND THIS COURT'S JUDGMENT

### A.    Law governing federal death sentences

From 1937 to 1984, federal death sentences were carried out pursuant to 18 U.S.C. § 3566, which provided that with respect to death sentences imposed under the few then extant federal capital offenses, "the manner of inflicting the punishment of death shall be the manner prescribed by the laws of the State within which the sentence is imposed."  An Act to Provide for the Manner of Inflicting the Punishment of Death § 323, 50 Stat. 304, 304 (June 19, 1937).[1]  Congress repealed Section 3566, however, upon enactment of the Sentencing Reform Act of 1984.

In 1988, Congress amended the continuing criminal enterprise statute to allow the death penalty in certain cases, 21 U.S.C. § 848(e), but that section lacked provisions specifying the manner by which executions would be carried out.  Thus, effective on February 18, 1993, the Attorney General of the United States promulgated regulations

---

[1] Available at https://www.loc.gov/law/help/statutes-at-large/75th-congress/session-1/c75s1ch367.pdf

3

providing that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed ... [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death."  58 Fed. Reg. 4898, 4901–02 (1993) (codified at 28 C.F.R. § 26.3).

When Congress passed the FDPA, however, it included an implementation provision that closely tracked the former § 3566:

> When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in that latter State in the manner prescribed by such law.

18 U.S.C. § 3596.

## B.   Mitchell's warrant fails to comply with the FDPA and this Court's judgment because it specifies a manner of execution different than prescribed by Arizona law.

The FDPA and this Court's judgment require that Mitchell's execution be implemented "in the manner prescribed by the law of the State of Arizona."  Dkt. No. 425; 18 U.S.C. § 3596. Mitchell's warrant, in contrast, provides that his execution should be implemented pursuant to 28 C.F.R. § 26.3(a)(1), which sets forth a distinct federal manner of implementation detailed further in the BOP Addendum.

### 1.   The FDPA requires that federal executions follow state procedures.

The FPDA requires "implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596.  This Court's judgment requires the same.  The DOJ and BOP maintain that the law requires merely the use of the state's execution method, i.e., lethal injection.  The text of the statute and its history demonstrate otherwise.

4

"Implementation" means more than a single act; rather it entails the process of making something happen. Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/implementation. (defining "implementation" as "the process of making something active or effective"); *see also* Black's Law Dictionary (10th ed. 2014) (defining "Implementation Plan" as "An outline of steps needed to accomplish a particular goal.")  The BOP's own protocols recognize as much.  Its Addendum to the BOP's Execution Protocol is titled "Federal Death Sentence *Implementation* Procedures" and provides that "procedures utilized by the BOP to *implement* federal death sentences shall be" as set forth therein.  (Ex. A. (emphasis added).)

"Prescribed" is another expansive term that includes direction at various levels of formality.  Merriam-Webster's Collegiate Dictionary 921(10th ed. 1994) (defining "prescribe" as "to lay down as a guide, direction, or rule of action."; *see also* Oxford English Dictionary Online (defining "prescribe" as "[t]o write or lay down as a rule or direction to be followed; to impose authoritatively, to ordain, degree; to assign").

Likewise, "manner" is a broad term that encompasses the procedures surrounding a prisoner's execution.  Merriam Webster's Collegiate Dictionary 708 (10th ed. 1993) (defining "manner" as "a mode of procedure or way of acting"); Webster's Collegiate Dictionary 609 (5th ed. 1936) ("way of acting; a mode of procedure"). The breadth of the term "manner" stands in contrast to "method," which has a specific meaning in the death-penalty context. Had Congress intended that deference to state law be limited to the state's chosen execution *method*, using this word would have clearly signaled such intent.  *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (when Congress "did not adopt 'obvious alternative' language, 'the natural implication is that [it] did not intend' the alternative").  While the broader idea of manner of execution certainly includes the specific method of execution, it is not limited to that narrow sense.

5

Courts have recognized as much. Recently, the Court of Appeals for the District of Columbia considered the meaning of the FDPA's use of "implementation of the sentence in the manner prescribed by the law of the State." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 108 (D.C. Cir. 2020),[2] *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020). Although the three judges reached different interpretations of the FDPA, two of the three judges on the panel rejected the argument that the FDPA's language requires adherence only to the method of execution provided by state law. *Id.* Judge Rao concluded "that the FDPA also requires the federal government to follow execution procedures set forth in state statutes and regulations, but not execution procedures set forth in less formal state execution protocols." *Id*. at 112. Judge Tatel "agree[d] with Judge Rao that the term 'manner' refers to more than just general execution method." *Id.* at 146 (Tatel, J., dissenting). Only Judge Katsas believed that "manner" referred solely to the choice of execution method, such as lethal injection versus hanging. Judge Rao Judge Tatel similarly rejected Judge Katsas' limited definition of manner. *Id.* at 146 ("I agree with Judge Rao that the term "manner" refers to more than just general execution method.) (Tatel. J. dissenting).

Similarly, the district court in *United States v. Hammer* held that the FPDA required compliance with state procedures more broad than the selection of execution method. 121 F. Supp. 2d 794 (M.D. Pa. 2000). Hammer, who had been sentenced to death in district court in Pennsylvania, objected to an intended autopsy of his body after execution. The district court held that Pennsylvania law governed the question of whether Hammer's religious objections required the government to forego an autopsy. *Id.* at 800 ("The implementation of Mr. Hammer's sentence of death is required to be consistent with the procedures set forth in the Pennsylvania Statutes, and those procedures include a section addressing whether an autopsy should be conducted.").

---

[2] Mitchell is not a party to this lawsuit.

This also appears to have been this Court's understanding of the plain meaning of the term as used in the FDPA and the judgment: at the August 15, 2019 status conference, the Court queried how Mitchell's execution would be conducted in conformance with "Arizona procedures," whether he would be moved to Arizona or whether another process would ensure that it "conforms with Arizona procedures." The Court then commented that "Arizona procedures" had recently changed, suggesting that the Court's understanding of these procedures included what was set forth in the protocols adopted in 2017, rather than the method of execution, which has been lethal injection since 1992. *See* Ex. C, Arizona Department of Corrections Order 710; Arizona Department of Corrections Website, History of the Arizona Death Penalty.[3]

This understanding of the FDPA's requirements finds support from additional provisions of the FDPA. For example, the statute identifies as an aggravating factor that the "defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim." 18 U.S.C. § 3592(c)(6). Judge Rao recently recognized that this use of "manner" in the same statute "refers not to the general method of killing, but to the precise way in which the offense was committed"—supporting the conclusion that the statute's use of "manner prescribed by state law" likewise entails the details of the procedure specified in state law, rather than just the method of execution. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 130 (Rao, J., conc.).

Other provisions further support this conclusion. The law provides that a marshal overseeing an execution "may use appropriate State or local facilities" and "may use the services of an appropriate State or local official." 18 U.S.C. § 3597(a). Following as this section does after the general requirement of section 3596 that death

---

[3] Available at https://corrections.az.gov/public-resources/death-row/arizona-death-penalty-history.

7

sentences be implemented per state law, this provision creates an exception regarding facility, suggesting that adherence to all other state procedures is mandatory.

Legislative history of the FDPA provides additional support for this conclusion. Instead of incorporating the then-existing federal regulation governing federal executions, the FDPA adopts some of the language of the 1937 statute referencing state law.  18 U.S.C. § 3596 (Marshal "shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed").  But while the FDPA incorporated the earlier statute's reference to state procedures, it broadened the scope of state procedures invoked.  The earlier law requires that the "manner of inflicting the punishment of death" reflect state law.  The FDPA mandates more broadly that "implementation" of the sentence must occur as prescribed by state law.

This broader scope reflects the reality of executions carried out under the 1937 law, the majority of which occurred at state facilities and presumably according to state procedures.  *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 137 (Rao, J., conc.) (citing the Government's concession at argument that "nearly all executions conducted under the 1937 statute took place in state facilities").  Janet Reno, in her role as Attorney General, commented that the FDPA mandated that this practice resume, explaining that the law "contemplate[s] a return to an earlier system in which the Federal Government does not directly carry out executions, but makes arrangements with states to carry out capital sentences in Federal cases."  H.R. Rep. No. 104-23, at 22 (1995).

The DOJ therefore recommended an amendment to the law that would allow federal executions to be "carried out …pursuant to uniform regulations issued by the Attorney General."  *Id.*  Congress did not make such an amendment.  Indeed, on nine occasions since the passage of the FDPA, Congress has considered and failed to pass bills that would have provided for federal executions to be carried out "pursuant to regulations prescribed by the Attorney General."  *In re Fed. Bureau of Prisons'*

1  *Execution Protocol Cases*, 955 F.3d at 151 (Tatel, J., conc.) (citing H.R. 2359, 104th
2  Cong. § 1 (1995); see also H.R. 851, 110th Cong. § 6 (2007); H.R. 3156, 110th Cong.
3  §  126 (2007); S. 1860, 110th Cong. § 126 (2007); H.R. 5040, 109th Cong. § 6 (2006);
4  S. 899, 106th Cong. § 6504 (1999); H.R. 4651, 105th Cong. § 501 (1998); S. 3, 105th
5  Cong. § 603 (1997); H.R. 1087, 105th Cong. § 1 (1997)).

6          Thus, the requirement of the FDPA and this Court's judgment that Mitchell's
7  execution be implemented in the manner prescribed by Arizona law includes Arizona's
8  stated procedures, not just its designated execution method, lethal injection.

9          **2.      The manner of execution set forth in the BOP protocol is**
10                   **inconsistent with that prescribed by Arizona law.**

11          Arizona statute provides that the method of execution is lethal injection to occur
12  "under the supervision of the state department of corrections."  A.R.S. §13-757.
13  Pursuant to that legal authority, the Arizona Department of Corrections (ADC) drafted
14  Arizona Department of Corrections Order 710, setting forth the procedures for Arizona
15  executions.  (Ex. C at 029 (citing statutory authority).)  Accordingly, these protocols
16  are part of Arizona law.  Indeed, while prior versions of Arizona protocols claimed not
17  to "create any enforceable legal rights or obligations," ADC entered an agreement
18  excluding any such language from future protocols and explicitly rendering legally
19  enforceable various aspects of Arizona's procedures.  (Ex. D, Stipulation and Order
20  from *First Amendment Coalition of Arizona, Inc. v. Ryan*, D. Ariz. Case No. 2:14-cv-
21  01447-NVW.)  This significant fact distinguishes the situation in Arizona from that
22  recently litigated in the Court of Appeals for the District of Columbia, which held that
23  "because the state protocols in this case 'do not appear to have the binding force of law,
24  they cannot be deemed part of the "law of the State.""  *In re Fed. Bureau of Prisons'*
25  *Execution Protocol Cases*, 955 F.3d at 124 n.10 (Katsas, J., conc.).  Accordingly
26  "Arizona law" that governs the manner of state executions includes statute, rules of
27  criminal procedure, and the Arizona protocols.

28

The BOP's procedures, as stated in its protocol and addendum, differ substantially from Arizona law as set forth in its protocol. Some of the most significant differences include:

- **Qualifications for placing IVs:** Arizona law requires that members of the IV team be certified in the U.S. to place IV lines; the BOP protocol does not; (Ex. C at 013; Ex. A at (D));

- **IV access:** Arizona law allows only for peripheral IV catheters or a central femoral line placed by someone qualified to do so; BOP's protocols allow "the Director or designee [to] determine the method of venous access"; (Ex. C at 014; Ex. A at (H));

- **Expiration of lethal-injection drugs:** Arizona law specifies that any chemical used in an execution must have an expiry date after that of the execution; BOP's protocols have no such requirement; (Ex. C, Attachment D at 033; Ex. A);

- **Disclosure of manufacture of lethal-injection drugs:** Arizona law requires disclosure to the inmate and counsel at the time a warrant is sought "The decision to use a compounded or non-compounded chemical"; BOP's protocols have no such disclosure requirement; (Ex. C, Attachment D at 034; Ex. A);

- **Testing of lethal-injection drugs:** Arizona law requires disclosure of a "quantitative analysis of any compounded or non-compounded chemical to be used in the execution" within ten days of seeking a warrant; BOP's protocols have no testing or disclosure requirement; (Ex. C, Attachment D at 034; Ex. A);

- **Access to counsel during execution:** Arizona law provides that if defense counsel will be present during the execution temporary office space will be provided and one laptop, tablet and cell phone allowed; counsel will have

10

access to a phone for emergencies during the execution; BOP's protocols make no such provisions; (Ex. C at 024; Ex. A); and

- **Discretion to modify protocol:** Arizona law expressly bars modification of "any material aspects of the execution process, including, but not limited to, the execution chemicals or dosages, consciousness checks, the access of the press and the inmate's counsel to the execution, and the timeframes established by this Department Order"; BOP's protocol broadly allows modification "at the discretion of the Director or his/her designee, as necessary to (1) comply with specific judicial orders; (2) based on the recommendation of on-site medical personnel utilizing their clinical judgment; or (3) as may be required by other circumstances"; (Ex. C at 008; Ex. A at (A)).

These significant differences mean that the BOP's stated intention to execute Lezmond Mitchell pursuant to the BOP protocol would not constitute an execution implemented in the manner prescribed by Arizona law.

As noted above, the D.C. Circuit Court recently considered the extent to which federal executions must follow state provisions. Judge Rao explained in a concurring opinion that the FDPA requires adherence to state "statute and formal regulations," *id.* at *128 (Rao, J., conc.), while Judge Tatel concluded that the FDPA "requires federal executions to be carried out using the same procedures that states use to execute their own prisoners—procedures set forth not just in statutes and regulations, but also in protocols issued by state prison officials pursuant to state law." *Id.* at *146 (Tatel, J., conc.). Although Judge Rao's reasoning takes an improperly narrow view of state law, it is of no consequence here because Arizona's protocols have the force of law. (Ex. D.) But even if one sets aside the protocols, Arizona statutory law is still inconsistent with the procedures set forth in the federal protocols. Significant differences between the federal protocols and the procedures set forth in Arizona's lethal injection statute include:

11

- **Notice:** Arizona statute requires at least 35 days' notice of an execution date, while the BOP protocols require only 20; A.R.S. § 13-759; 28 C.F.R. § 26.4(a);[4]

- **Permitted defense witnesses:** Arizona statute provides that a defendant may select up to five individuals to be present during the execution, while the BOP protocols permit only three, A.R.S. § 13-758; 28 C.F.R. § 26.4(c-d); and

- **Availability of delay:** Arizona Rule of Criminal Procedure 31.23 provides for up to a 60-day delay if execution is deemed by the state supreme court to be "impracticable" while the DOJ Protocols permit delay only upon a court-ordered stay, presumably only on a showing of constitutional or statutory violation, A.R. Crim. P. 31.23; 28 C.F.R. § 26.3(a)(1).[5]

The significant distinctions between the federal protocol and the procedures set forth in Arizona statute, its rules of criminal procedures, and its legally enforceable protocol mean that if "the manner prescribed by state law" means anything other than mere execution method—and several judges have concluded it does—then the federal protocol does not comply with the FDPA.

The BOP has recently proposed changes to their regulations allowing modification of procedures as necessary to comply with "applicable law," which it notes would apply in the event "controlling State law . . . requires different procedures." (Ex. E, Proposed Rule.) This proposed change is itself a recognition that under the FDPA state law dictates not just the method of execution, but the types of procedures set forth in state or federal protocol. Moreover, this proposed change is a recognition that under the existing regulations, the Director lacks the authority to

---

[4] This distinction is significant here given that DOJ provided only 27 days of notice to Mitchell of his execution date.

[5] The question of impracticality of an execution is particularly relevant as the BOP seeks to press forward with this execution during a widespread, deadly pandemic.

12

deviate from the federal protocols in order to comply with different requirements of state law. Because the noticed execution of Mitchell would not comply with the statutory requirement that it occur in the manner of state law, and the Director lacks authority to make changes to bring it into conformity, this Court must strike the execution warrant.

### V.  CONCLUSION

Because Mitchell's execution warrant complies neither with this Court's order nor with the Federal Death Penalty Act, Mitchell requests that the court strike the execution warrant, vacate the execution date and enjoin further violation of the Court's January 8, 2003 judgment.

Respectfully submitted,

CUAUTEMOC ORTEGA
Interim Federal Public Defender


DATED:  August 6, 2020         By  */s/ Jonathan C. Aminoff*

JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Defendant
Lezmond Charles Mitchell

1

2

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William G. Voit, Assistant U.S. Attorney
Arizona State Bar No. 025808
William.Voit@usdoj.gov

Sharon Sexton, Assistant U.S. Attorney
Arizona State Bar No. 012359
Sharon.Sexton@usdoj.gov

*/s/ Iliana Hernandez*
Iliana Hernandez

14