CUAUTEMOC ORTEGA (Cal. Bar No. 257443)
Interim Federal Public Defender
JONATHAN C. AMINOFF (Cal. Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (Cal. Bar No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant
Lezmond Charles Mitchell

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

United States of America ,

Plaintiff,

v.

Lezmond Charles Mitchell,

Defendant.

Criminal No. 3:01-CR-01062-DGC

(Civil No. 3:09-CV-08089-DGC)

**DEATH-PENALTY CASE**

**EXECUTION SET FOR AUGUST 26, 2020**

Honorable David G. Campbell
United States District Judge

**MOTION FOR STAY OF EXECUTION**

**Oral Argument: August 12, 2020**
**Time: 2:30 p.m.**

**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Lezmond Charles Mitchell,<br><br>Defendant. | Criminal No. 3: 01-CR-01062-DGC<br>(Civil No. 3:09-CV-08089-DGC)<br><br>**EXECUTION SET FOR AUGUST 26, 2020**<br><br>Honorable David G. Campbell<br>United States District Judge<br><br>**MOTION FOR STAY OF EXECUTION**<br><br>**Oral Argument: August 12, 2020**<br>**Time: 2:30 p.m.** |

Movant Lezmond Charles Mitchell moves the Court for a stay barring his execution before the resolution of this litigation. This motion is based on the attached memorandum of points and authorities, the Motion to Enforce the Judgment and exhibits thereto, and all the files and records of this case.

Respectfully submitted,

Dated: August 7, 2020

*/s/ Jonathan Aminoff*
JONATHAN AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

**TABLE OF CONTENTS**


Page

I. INTRODUCTION ... 1

II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ... 1

III. THE COURT SHOULD GRANT A STAY UNDER *HILL v. MCDONOUGH* ... 2

A. Lezmond Mitchell presents a substantial case for relief on the merits of his claim that the BOP's noticed execution of Mitchell violates the FDPA and the terms of this Court's judgment. ... 3

B. Mitchell faces the greatest possible irreparable harm. ... 7

C. The balance of equities favors a stay. ... 7

D. The public interest favors a stay. ... 9

E. Mitchell has not unnecessarily delayed in bringing his motion. ... 10

IV. CONCLUSION ... 10

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**


*Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017) .......... 4

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020) .......... 8

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......... 6

*Beaty v. Brewer*, 649 F.3d 1071 (9th Cir. 2011) .......... 3

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) .......... 9

*Evans v. Bennett*, 440 U.S. 1301 (1979) .......... 7

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) .......... 4, 5, 6, 9

*Hill v. McDonough*, 547 U.S. 573 (2006) .......... 2

*Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012) .......... 3

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) .......... 3

*Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020) .......... 9

*Morse v. ServiceMaster Global Holdings, Inc.*, 2013 U.S. Dist. LEXIS 3663 (N.D. Cal. Jan. 8, 2013) .......... 3

*Nelson v. Campbell*, 541 U.S. 637 (2004) .......... 2, 3

*Osorio-Martinez v. Attorney Gen. of the U.S.*, 893 F.3d 153 (3d Cir. 2018) .......... 8

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Sampson v. Murray*,
415 U.S. 61 (1974)........................................................................................7

*Towery v. Brewer*,
672 F.3d 650 (9th Cir. 2012)...........................................................................3

*Transfirst Grp., Inc. v. Magliarditi*,
2017 WL 2294288 (D. Nev. May 25, 2017)...................................................9

*Wainwright v. Booker*,
473 U.S. 935 (1985)........................................................................................7

*Zepeda v. I.N.S.*,
753 F.2d 719 (9th Cir. 1983)...........................................................................7

**Docketed Cases**

*Mitchell v. United States*,
Ninth Cir. Case No. 18-17031...................................................................2, 8

**Federal Statutes**

18 U.S.C. § 3596...............................................................................................3

28 CFR 26.3(a)(1)....................................................................................2, 3, 10

## I. INTRODUCTION

Lezmond Mitchell seeks to litigate the appropriate interpretation of this Court's judgment. Dkt. No. 606. A stay of execution would allow the Court's consideration of his claim before the Government executes him in an illegal manner. Because Mitchell is likely to succeed in his Motion and the balance of equities tips strongly in his favor, he respectfully requests that this Court grant him a stay of execution.

## II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On May 20, 2003, a jury recommended that this Court sentence Mitchell to death. On September 10, 2003, the Government submitted a proposed judgment and order which included the following language: "When the sentence is to be implemented, the Attorney General shall release the Defendant to the custody of the United States Marshal, who shall supervise the implementation of the sentence in the manner prescribed by law of the State of Arizona." Dkt. No. 411 at 4:1-3. On September 15, 2003, this Court formally sentenced Mitchell to death, and issued its sentencing order stating, inter alia,:

> Pursuant to the Federal Death Penalty Act of 1994, specifically, Section 3594 of Title 18 of the United States Code, pursuant to the jury's special findings returned on May 20, 2003, and pursuant to the jury's unanimous vote recommending that the defendant be sentenced to death, IT IS THE JUDGMENT OF THIS COURT THAT the defendant, Lezmond Charles Mitchell, be sentenced to death on Count Two of the Second Superseding Indictment. The judgment and death sentence on Count Two is supported by independent verdicts with regard to each victim. Furthermore, pursuant to Title 18, Section 3596 of the United States Code, the defendant is hereby committed to the custody of the Attorney General of the United States until exhaustion of the procedures for appeal of the judgment and conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the defendant to the custody of the United States Marshal, who shall supervise implementation of the sentence *in the manner prescribed by the law of the State of Arizona.*

Dkt. No. 425 (emphasis added).

On July 25, 2019, T.J. Watson, the warden of the Federal Correctional Complex at Terre Haute, Indiana ("USP Terre Haute") served Mitchell with a letter informing

him that pursuant to 28 CFR 26.3(a)(1), the Director of the Bureau of Prisons (BOP) had set December 11, 2019 as Mitchell's execution date. The same day, in the four pending federal lethal injection lawsuits in the District Court for the District of Columbia, the Government filed a notice indicating that it had adopted a revised lethal injection protocol. Dkt. No. 606-1 (BOP Addendum).

On October 4, 2019, Mitchell's execution was stayed by the Ninth Circuit Court of Appeals, pending its consideration of Mitchell's appeal of this Court's denial of his Rule 60(b) motion. *Mitchell v. United States*, Ninth Cir. Case No. 18-17031, Dkt. 26 (Oct. 4, 2019). The Ninth Circuit ultimately affirmed this Court's denial. *Mitchell v. United States*, Ninth Cir. Case No. 18-17031, Dkt. 37 (Apr. 3, 2020).

Although the Ninth Circuit's mandate had not yet issued and its stay had not yet expired,[1] on July 29, 2020, Watson served Mitchell with a letter indicating that pursuant to 28 CFR 26.3(a)(1), the BOP had set an execution date for Mitchell of August 26, 2020. Dkt. No. 606-2.

On August 7, 2020, Mitchell filed a motion to enforce the Court's sentencing order. Dkt. No. 606. The Court promptly ordered briefing, and set oral argument for August 12, 2020.

## III. THE COURT SHOULD GRANT A STAY UNDER *HILL v. MCDONOUGH*

In *Hill v. McDonough*, 547 U.S. 573, 584 (2006), and *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004), the Supreme Court held that "like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584. In considering a request for

[1] The Government has taken the position that the Ninth Circuit's stay should dissolve on August 10, 2020, leaving just 16 days until Mitchell's scheduled execution. Ninth Cir. Case No. 18-17031, Dkt. No. 47, 49. Mitchell moves for a stay of execution in this Court at this time to ensure the Court has adequate time to consider his motion in conjunction with his pending motion to vacate the execution date. Dkt. No. 606.

a stay of execution, the Court considers "not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649-50. In order to obtain a stay of execution as a matter of equity, a death-row prisoner must show that the following four factors, balanced against each other, weigh in his favor: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm unless a stay is issued; (3) the balance of hardships tips in the prisoner's favor; and (4) a stay is in the public interest. *See Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7 (2008)). "[A] stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) (same).

**A. Lezmond Mitchell presents a substantial case for relief on the merits of his claim that the BOP's noticed execution of Mitchell violates the FDPA and the terms of this Court's judgment.**

It is Mitchell's burden to establish that his appeal presents a "substantial case for relief on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). While the Ninth Circuit has not yet clearly defined that phrase, "[o]ften a 'substantial case' is one that raises genuine matters of first impression within the Ninth Circuit." *Morse v. ServiceMaster Global Holdings, Inc.*, 2013 U.S. Dist. LEXIS 3663, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)).

Mitchell is likely to succeed in his claim that the BOP's noticed execution violates the Federal Death Penalty Act and the judgment of this Court. Both require that Mitchell's execution be implemented "in the manner prescribed by the law of the State of Arizona." Dkt. No. 425; 18 U.S.C. § 3596. Mitchell's warrant, in contrast, provides that his execution should be implemented pursuant to 28 CFR 26.3(a)(1), which sets forth a distinct federal manner of implementation detailed further in the BOP

Addendum. Dkt. No. 606-1. On its face, then, Mitchell's warrant notices an execution that is not in the "manner prescribed by the law of the State of Arizona."

The plain text of the statute favors Mitchell's reading. "Implementation" means more than a single act; rather it entails the process of making something happen. Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/implementation. (defining "implementation" as "the process of making something active or effective"); *see also* Black's Law Dictionary (10th ed. 2014) (defining "Implementation Plan" as "An outline of steps needed to accomplish a particular goal").

"Prescribed" is another expansive term that includes direction at various levels of formality. Merriam-Webster's Collegiate Dictionary 921(10th ed. 1994) (defining "prescribe" as "to lay down as a guide, direction, or rule of action"); *see also* Oxford English Dictionary Online (defining "prescribe" as "[t]o write or lay down as a rule or direction to be followed; to impose authoritatively, to ordain, degree; to assign").

Likewise, "manner" is a broad term that encompasses the procedures surrounding a prisoner's execution. Merriam Webster's Collegiate Dictionary 708 (10th ed. 1993) (defining "manner" as "a mode of procedure or way of acting"); Webster's Collegiate Dictionary 609 (5th ed. 1936) ("way of acting; a mode of procedure"). The breadth of the term "manner" stands in contrast to "method," which has a specific meaning in the death-penalty context. Had Congress intended that deference to state law be limited to the state's chosen execution *method*, using this word would have clearly signaled such intent. *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (when Congress "did not adopt 'obvious alternative' language, 'the natural implication is that [it] did not intend' the alternative").

Courts have recognized as much. Recently, the Court of Appeals for the District of Columbia considered the meaning of the FDPA's use of "implementation of the sentence in the manner prescribed by the law of the State." *In re Fed. Bureau of*

*Prisons' Execution Protocol Cases*, 955 F.3d 106, 108 (D.C. Cir. 2020),[2] *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020). Although the three judges reached different interpretations of the FDPA, two of the three judges on the panel rejected the position that the FDPA's language requires adherence only to the *method* of execution provided by state law. *Id.* Judge Rao concluded that "the FDPA also requires the federal government to follow execution procedures set forth in state statutes and regulations, but not execution procedures set forth in less formal state execution protocols." *Id.* at 112. (Rao, J., conc.) Judge Tatel "agree[d] with Judge Rao that the term 'manner' refers to more than just general execution method, but went further to conclude that the FDPA "requires federal executions to be carried out using the same procedures that states use to execute their own prisoners—procedures set forth not just in statutes and regulations, but also in protocols issued by state prison officials pursuant to state law." *Id.* at 146 (Tatel, J., dissenting).

Similarly, the district court in *United States v. Hammer* held that the FPDA required compliance with state procedures more broad than the selection of execution method. 121 F. Supp. 2d 794 (M.D. Pa. 2000). Hammer, who had been sentenced to death in district court in Pennsylvania, objected to an intended autopsy of his body after execution. The district court held that Pennsylvania law governed the question of whether Hammer's religious objections required the government to forego an autopsy. *Id.* at 800 ("The implementation of Mr. Hammer's sentence of death is required to be consistent with the procedures set forth in the Pennsylvania Statutes, and those procedures include a section addressing whether an autopsy should be conducted.").

This also appears to have been this Court's understanding of the plain meaning of the term as used in the FDPA and the judgment: at the August 15, 2019 status conference the Court queried how Mitchell's execution would be conducted in

---

[2] Mitchell is not a party to this lawsuit.

conformance with "Arizona procedures," whether he would be moved to Arizona or whether another process would ensure that it "conforms with Arizona procedures." Dkt. No. 606-6 at Bates 083-84. The Court then commented that "Arizona procedures" had recently changed, suggesting that the Court's understanding of these procedures included what was set forth in the protocols adopted in 2017, rather than the method of execution, which has been lethal injection since 1992. *See* Dkt. No. 606-3.[3]

As detailed further in Mitchell's Motion to Strike the Execution Warrant, a broader interpretation of "manner" is also consistent with the larger context of the FDPA, its legislative history, and the DOJ's own interpretation of the statute. Dkt. No. 606 at 7-9.

If the Court does not find that Mitchell has established a likelihood of success on the merits, this finding is not fatal to Mitchell's entitlement to a stay. Mitchell may alternatively demonstrate that "serious questions going to the merits" of his claims are presented in his appeal, and obtain a stay as long as the other factors weigh in his favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The meaning of the FDPA's requirement that executions be implemented in the manner prescribed by state law is an issue of first impression in the Ninth Circuit. The question was a source of substantial debate among the judges on the panel of the Court of Appeals for the District of Columbia when that Court recently considered it. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 108. This Court's own concerns about this issue (Dkt. No. 606, Ex. E) demonstrate that Mitchell's motion, at minimum, raises a substantial case questions about whether the BOP's noticed execution of Mitchell violates the FDPA. Because the balance of hardships tilts strongly in his favor, a stay of execution is appropriate. *All. for the Wild Rockies*, 632 F.3d at 1131-32.

---

[3] Available at https://corrections.az.gov/public-resources/death-row/arizona-death-penalty-history.

**B. Mitchell faces the greatest possible irreparable harm.**

Absent a stay, Mitchell could be executed before he can pursue this litigation and thus could be executed by means of an illegal protocol. The harm could not be greater or more irreparable. *See, e.g.*, *Wainwright v. Booker*, 473 U.S. 935, n.1 (1985) (Powell, J., concurring in decision to vacate stay of execution) ("The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty").

The harm to Mitchell is not undermined by the fact that the Government would be able to execute him had it chosen to proceed in a manner permitted by the FDPA, i.e., the manner prescribed by Arizona law. The execution, as the Government currently intends to implement it, is nonetheless illegal. And even if it were relevant whether federal and state execution procedures differ, Mitchell has shown that they do. *See* Dkt. 606 at 9-13 (comparing the BOP procedures to the Arizona procedures and establishing that Arizona's procedures are significantly more robust and would allow Mitchell, *inter alia*, better access to counsel, better training personnel, and more transparency regarding the lethal drugs).

**C. The balance of equities favors a stay.**

In contrast, the Government will not be irreparably harmed if Mitchell's execution is stayed. While the Government in opposing stays of execution often claims an interest in the enforcement of criminal judgments, here that interest depends on whether the Government's noticed execution even constitutes a valid enforcement of the judgment and sentence entered by this Court. The Government cannot suffer harm from an order that merely restrains an unlawful action. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

Wasted preparation efforts are inadequate to demonstrate irreparable harm to the Government. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum*

*Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough.")). Moreover, the Government could mitigate any potential financial harm by promptly stopping any preparations for Mitchell's execution.

Nor does the Government have any persuasive argument that delaying Mitchell's execution for the period of this litigation undermines its interest in the timely enforcement of capital punishment. The Government has stated that "a scheduled federal execution date cannot readily be moved in light of BOP contractor availability and other complex logistical consideration." *Mitchell v. U.S.*, No. 18-17031 (9th Cir., July 29, 2020), Dkt. 47. In support of this statement, it cited an application filed in the Supreme Court, which states that if the execution in question were delayed, it could not be rescheduled for at least *one* month. *Id*. (citing *Barr v. Lee*, No. 20A8, 2020 WL 3964985 (July 14, 2020)). In contrast, prior to this year, the Government had not executed a federal prisoner since 2003, and the Government itself suspended executions from 2011 until 2019. The Government's years-long delay in generating any execution protocols dwarfs its expected delay in rescheduling and undermines any purported claim of urgency. *Osorio-Martinez v. Attorney Gen. of the U.S.*, 893 F.3d 153, 179 (3d Cir. 2018) ("the fact that the Government has not—until now—sought to" act "undermines any urgency" to do so now).

Whatever urgency may exist, it was manufactured by the Government when it chose to set an execution date with just 28 days' notice at a time when the Ninth Circuit's stay order was still in effect. And whatever delay this litigation may cause is ultimately due to the Government's failure to plan an execution that adheres to the requirements of the FDPA and the trial court's judgment, despite over a decade's notice of the terms of each. "That the government's asserted harm is largely self-inflicted 'severely undermines' its claim for equitable relief." *Al Otro Lado v. Wolf*, 952 F.3d

999, 1008 (9th Cir. 2020) (quoting *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993)).

**D. The public interest favors a stay.**

"The decision to seek the death penalty in Mitchell's case was made against the express wishes of the Navajo Nation, [and] several members of the victims' family," who are members of the Navajo Nation. *Mitchell v. United States*, 958 F.3d 775, 793 (9th Cir. 2020) (Christen, J., conc.). Navajo "culture and religion teaches us to value life and instruct against the taking of human life for vengeance." *Id.* It certainly upholds no interest of the victims' family or the Navajo Nation to carry out Mitchell's execution before ensuring that it proceeds in a manner prescribed by law and the Court's judgment.

The public at large also has an interest in making sure that agencies follow the law and that judgments are legally enforced. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018); *Transfirst Grp., Inc. v. Magliarditi*, No. 217CV00487APGVCF, 2017 WL 2294288, at *1 (D. Nev. May 25, 2017). This interest is all the more weighty when it implicates the most solemn act the Government can undertake—killing a person.

In this most important and politically charged area, Congress took a federalist approach by incorporating the laws of the states. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 141 (Rao, J., conc.) (noting that the FDPA balances "two competing values: the need to effectively implement federal death sentences and an interest in federalism"). Allowing the BOP to go forward with an execution that violates the FDPA by failing to appropriately incorporate State law would run counter to federalism interest enshrined in the structure of the FDPA.

Nor is any finality interest implicated here. Mitchell does not challenge his conviction or sentence of death in this litigation; neither will be disturbed if this Court enjoins the BOP from executing Mitchell pursuant to illegal protocol.

For all of these reasons, the public interest favors a stay to permit consideration of Mitchell's motion.

**E. Mitchell has not unnecessarily delayed in bringing his motion.**

On July 29, 2020, the Government provided Mitchell notice of its intent to execute him pursuant to 28 CFR 26.3(a)(1). Mitchell filed his motion nine days later on August 6, 2020. Thus, Mitchell has acted promptly upon notice of the Government's intention to execute him in contravention of the terms of this Court's judgment and the FDPA. He has not waited until the eve of execution, and the proximity of his motion and execution date are not caused by any delay on Mitchell's part, but rather by the Government's decision to give Mitchell only 28 days' notice of his execution date.

## IV. CONCLUSION

Because Mitchell presents, at least, a serious question on the merits of his claim and the balance of equities tilts sharply in his favor, this Court should grant a stay of execution until the resolution of his motion.

Respectfully submitted,

CUAUTEMOC ORTEGA
Interim Federal Public Defender

DATED: August 7, 2020

By *_/s/ Jonathan Aminoff_*

JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Defendant
Lezmond Charles Mitchell

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of August, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William G. Voit, Assistant U.S. Attorney
Arizona State Bar No. 025808
William.Voit@usdoj.gov

Sharon Sexton, Assistant U.S. Attorney
Arizona State Bar No. 012359
Sharon.Sexton@usdoj.gov

*/s/ Edith Prado*
Edith Prado