**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Charles Mitchell,<br><br>  Petitioner,<br><br>v.<br><br>United States of America,<br><br>  Respondent. | No. CV 20-8217-PCT-DGC<br><br>(No. CR-01-01062-001-PCT-DGC)<br><br>**ORDER**<br>DEATH-PENALTY CASE<br><br>Execution Date: August 26, 2020 |

Last night, Petitioner Lezmond Mitchell filed two motions: (1) a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, or, in the alternative, for relief under 28 U.S.C. § 2241 (Doc. 1); and (2) a motion for a stay of execution (Doc. 3). The United States filed responses this afternoon opposing both motions (Docs. 5, 6) and Mr. Mitchell filed a reply this evening in support of both motions (Doc. 7). Mr. Mitchell was sentenced to death in this District in *United States v. Mitchell*, CR 01-1062-001-PCT-DGC, he is now confined at the United States Penitentiary in Terre Haute, Indiana (Register #486585-008), and his execution is scheduled for next week. The Court will deny the motions. Mr. Mitchell's request for oral argument is denied because the issues have been fully briefed, the merits of the § 2255 motion do not present a close question, and further delay for oral argument is not warranted.

**I.  Procedural History.**

In 2003, a jury convicted Mr. Mitchell, a Navajo, of first-degree murder, felony murder, carjacking resulting in death, and related federal crimes. *See United States v.*

*Mitchell*, 502 F.3d 931, 942–43 (9th Cir. 2007).  The victims, a 63-year-old grandmother and her 9-year-old granddaughter, were also Navajos, and the crimes occurred on the Navajo Indian reservation in Arizona.  *Id.*

Mr. Mitchell faced capital punishment under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591–98, based on his conviction for carjacking resulting in death.  *Id.* at 945–46.  Under the Major Crimes Act, 18 U.S.C. § 1153(a), the federal government is permitted to prosecute serious crimes such as murder and manslaughter involving intra-Indian offenses committed in Indian country.  *Id.*  The FDPA eliminated the death penalty for federal prosecutions of Indian defendants under the Major Crimes Act, subject to being reinstated at the election of a tribe's governing body – the "opt-in" provision.  18 U.S.C. § 3598.  The Navajo Nation has declined to opt in to the federal death penalty.  *Id.*  "[T]he Navajo Nation opposes the death penalty on cultural and religious grounds," and the Attorney General of the Navajo Nation expressed the Navajo Nation's opposition to the United States seeking capital punishment in Mr. Mitchell's case in a letter to the United States Attorney for the District of Arizona.  *Id.* at 948.

As a result, when the United States prosecuted Mr. Mitchell it could not seek the death penalty on the two murder charges.  Instead, it pursued a death sentence by charging Mr. Mitchell with carjacking resulting in death, a crime of nationwide applicability not covered by the opt-in requirement.  *Id.*  Mr. Mitchell was given a death sentence on the carjacking count in accordance with the jury's unanimous verdict.  *Id.* at 942.

On appeal, Mr. Mitchell argued, *inter alia*, that because the Navajo Nation never opted in to the federal capital punishment scheme, the death sentence violated tribal sovereignty.  The Ninth Circuit considered Mr. Mitchell's claims in detail and issued an opinion on September 5, 2007, affirming his conviction and sentence.  *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007).  On June 9, 2008, the Supreme Court denied Mr. Mitchell's petition for certiorari.  *Mitchell v. United States*, 553 U.S. 1094 (2008).

Mr. Mitchell moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  Motion to Vacate, Set Aside, or Correct, *Mitchell v. United States*, No. CV-09-

8089-PCT-DGC (D. Ariz. filed June 8, 2009), Doc. 9. The Court denied his motion on September 30, 2010, *Mitchell v. United States*, No. CV-09-8089-PCT-DGC, 2010 WL 3895691 (D. Ariz. Sept. 30, 2010), and the Ninth Circuit affirmed, *Mitchell v. United States*, 790 F.3d 881, 883 (9th Cir. 2015). On October 3, 2016, the Supreme Court denied Mr. Mitchell's application for certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

Thereafter, Mr. Mitchell filed a petition with the Inter-American Commission on Human Rights ("IACHR" or "the Commission"), an organization formed under the auspices of the Organization of American States ("OAS"). The petition alleged violations of various provisions of the American Declaration of the Rights and Duties of Man ("American Declaration"), including the right to life, the right to equality before the law, and rights related to due process and a fair trial. *See* Petition No. P-627-17, Lezmond C. Mitchell, Response of the United States, Sept. 21, 2017.[1]

Mr. Mitchell argued that the United States violated the sovereignty of the Navajo Nation by seeking the death penalty. He also argued that his rights to due process and a fair trial were violated by alleged collusion between the United States government and tribal law enforcement, ineffective assistance of counsel, and decisions of the federal courts in his habeas proceedings.

On July 14, 2020, the IACHR issued its report on the admissibility and merits of Mr. Mitchell's petition, concluding the United States was responsible for violations of Articles I, XVIII, XXV, and XXVI of the American Declaration. *See* IACHR, Report No. 193/20, Case 13.570, Admissibility and Merits, Lezmond C. Mitchell, United States of America, July 14, 2020. On August 12, 2020, the Commission issued its final report. *See* IACHR, Report No. 209/20. Case 13.570, Admissibility and Merits (Final), Lezmond C. Mitchell, United States of America, August 12, 2020.

**II. Motion to Stay.**

Mr. Mitchell asks the Court to stay his execution until the resolution of his § 2255 motion. Doc. 3 at 12. The motion to stay is moot because this order resolves the motion.

---

[1] *Available at* https://www.state.gov/wp-content/uploads/2019/05/14.g.-Mitchell-Petn-No.-P-627-17-U.S.-Response-to-Petition-Sept.-21-2017.pdf (last visited Aug. 21, 2020).

### III. Jurisdiction.

Mr. Mitchell previously filed and litigated a § 2255 motion challenging his conviction and sentence. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), he may not file a second or successive § 2255 motion in this Court unless he has obtained a certification from the Court of Appeals. 28 U.S.C. §§ 2255(h) and 2244. Mr. Mitchell has obtained no such certification.

He asserts that the present motion should be considered a "first" § 2255 motion because he could not have raised his claim in his previous petition. Doc. 1 at 17, citing *In re Tamayo*, 552 F. App'x. 371, 374 (5th Cir. 2014), and *Leal Garcia v. Quarterman*, 573 F.3d 214, 222–24 (5th Cir. 2009) (determining that petitioner's second-in-time § 2255 petition was not successive because it relied on a presidential declaration in light of an International Court of Justice opinion issued after petitioner's first habeas petition).

The Supreme Court "has declined to interpret 'second or successive' as referring to all [habeas] applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior [habeas] application." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). In *Panetti*, for example, the Court held that competency-to-be-executed claims are exempt from the limitation on second or successive petitions because such claims generally are not ripe until after the time has run to file a first petition. *Id.* at 947; *see also Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (declining to apply § 2244(b) to a second petition where the first was dismissed for lack of exhaustion).

The Ninth Circuit has acknowledged that the reasoning of *Panetti* is not limited to competency claims. In *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011), the court observed that "[p]risoners may file second-in-time petitions based on events that do not occur until a first petition is concluded" if the claims raised therein "were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." In *United States v. Lopez*, 577 F.3d 1053, 1064 (9th Cir. 2009), the court held that the factors identified by the Supreme Court in *Panetti* must be considered in deciding whether other types of claims may be addressed on the merits. These include "(1) the implications for

habeas practice of reading 'second or successive' literally for such claims, (2) whether barring such claims would advance the policies behind AEDPA's passage and (3) the Court's pre- and post-AEDPA habeas jurisprudence, including the common law abuse-of-the-writ doctrine." *Id.* at 1056 (citing *Panetti*, 551 U.S. at 942–43). "The [*Panetti*] Court cautioned against interpreting AEDPA's 'second or successive' provisions in a way that would foreclose any federal review of a constitutional claim, or otherwise lead to perverse results, absent a clear indication that Congress intended that result." *Id.* at 1063.

The Court agrees with the government's assertion that two cases cited by Petitioner, *Woods v. Cary*, 525 F.3d 886, 888–90 (9th Cir. 2008) and *Magwood v. Patterson*, 561 U.S. 320, 331 (2010), do not support Mr. Mitchell's contention that his claims are properly raised under S 2255 for the reasons stated in the government's response. The government also attempts to distinguish *Panetti*, (*see* Doc. 5 at 8), asserting that in *Panetti*, the prisoner's *Ford* claim (regarding a prisoner's competency to be executed), was a new factual predicate for a claim; before the competency issue was ripe, no claim of the sort could have been brought. The government asserts that is not the case here. The court disagrees. Under Mr. Mitchell's theory of this motion, his constitutional claim – that Mr. Mitchell's conviction and sentence violate the Supremacy Clause of the U.S. Constitution – was not ripe until the Commission's report created binding obligations on the United States; obligations which can only be fulfilled if Mr. Mitchell is granted a new trial and his death sentence commuted.

Mr. Mitchell could not have raised his claim based on the August 2020 IACHR decision in his first federal habeas petition in June 2009. Reading the "second or successive" provisions literally would foreclose federal court review of the claim, would not promote the policies behind the AEDPA, which are to require assertion of all claims that can be asserted at the time of a petition, and would not square with Supreme Court jurisprudence such as *Panetti*. Mr. Mitchell's § 2255 petition is therefore properly filed and does not require pre-filing authorization.[2]

---

[2] The government argues that this is a second and successive petition because Mitchell previously asserted each of the claims accepted by the IACHR and cannot litigate them

**IV.     Merits.**

Mr. Mitchell makes a fairly radical argument. He asserts that this Court and all courts of the United States are bound as a matter of law by the IACHR's decision that he did not receive a fair trial and cannot be sentenced to death in a new trial. He argues that this Court has no choice but to grant him a new trial and, if that trial results in conviction, to not impose the death penalty. Doc. 1 at 20. He contends that the United States has surrendered the power of its courts to the IACHR.

He asserts that the IACHR decision "created rights in Mitchell under international law that are binding on the United States for two reasons: (1) because they are derived directly from the OAS Charter, a treaty within the meaning of the U.S. Constitution; and (2) because they are derived, through the OAS Charter, from the American Declaration, a statement of human rights norms the United States has not only adopted, but helped to draft." Doc. 1 at 20. The Court is not persuaded by either argument.[3]

The Supremacy Clause of the Constitution provides that "all Treaties made . . . under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. The Supreme Court has recognized, however, that "while treaties 'may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be "self-executing" and is ratified on these terms.'"

---

again. Doc. 5 at 8. But Mitchell does not seek to litigate those claims again in this motion. He instead asserts that the Court is bound by the IACHR decision, an issue that was not litigated before. The government also argues that the IACHR decision is not a new development because it has no binding effect in this Court. That is a merits issue, and as the Seventh Circuit noted in *Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001), "we must not confuse lack of substantive merit with lack of jurisdiction."

[3] Citing many new cases, Mr. Mitchell argues for the first time in his reply brief that "even if this Court concludes that the OAS Charter is a non-self-executing treaty, it is well established that habeas has historically been available to enforce rights under treaties that do not themselves create private rights of actions." Doc. 7 at 11–12. He also argues that "the weight of the Supreme Court's precedents suggests that claims by petitioners in habeas cases can be analogized to claims by defendants in other civil – and even criminal – lawsuits." *Id.* at 12. The Court will not consider these arguments made for this first time in a reply brief. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996).

- 6 -

*Medellin v. Texas*, 552 U.S. 491, 505 (2008) (citing *Igartua–De La Rosa v. United States*, 417 F.3d 145, 150 (C.A.1 2005) (en banc) (Boudin, C. J.)).[4]

The treaty at issue in this case is the Charter of the OAS, which was originally ratified by the United States in 1951 and ratified as amended in 1968. The Charter provided for the creation of the IACHR and created the American Convention on Human Rights (the "American Convention"). OAS Charter (Amended) Article 112, 21 U.S.T. 607. Congress has not enacted statutes implementing the OAS Charter within the United States. As a result, it creates law binding in the courts of this country only if it is self-executing and was ratified on those terms. *Medellin*, 552 U.S. at 505.

Mr. Mitchell asserts that the OAS Charter is self-executing because it "expressly authorizes the Commission to promote and protect human rights, and the Commission is authorized to hear individual petitions and to interpret the scope and meaning of human rights under the OAS Charter and the American Declaration." Doc. 1 at 21. The Supreme Court held in *Medellin*, however, that a treaty's mere grant of adjudicatory authority to an international tribunal does not impose a self-executing obligation on member states to comply with the tribunal decisions. 552 U.S. at 507–08 ("The Protocol says nothing about the effect of an [International Court of Justice ("ICJ")] decision and does not itself commit signatories to comply with an ICJ judgment. The Protocol is similarly silent as to any enforcement mechanism."). Some clearer statement of member states' obligations is required before a treaty will be deemed self-executing. *Id.* at 508 (The enforcement article "does not provide that the United States 'shall' or 'must' comply with an ICJ decision, nor indicate that the Senate that ratified the U.N. Charter intended to vest ICJ decisions with immediate legal effect in domestic courts."). This is true even when, as here, the tribunal's decisions "are often precipitated by disputes involving particular persons or entities[.]" *Id.* at 512.[5]

---

[4] In *Medellin*, the Supreme Court explained the important distinction between treaties that "constitute[] an international law obligation on the part of the United States" and treaties that "automatically constitute binding federal law enforceable in United States courts." 552 U.S. at 504. Mr. Mitchell's motion disregards this distinction.

[5] Mitchell tries to distinguish *Medellin* by noting that it addressed whether a decision of the ICJ pre-empted state law, and by arguing that his case has nothing to with state law.

- 7 -

Mr. Mitchell cites no language from the OAS Charter suggesting that member states are required to abide by IACHR decisions, and courts addressing the issue have concluded that it contains no such language. In *Flores-Nova v. Attorney Gen. of U.S.*, 652 F.3d 488 (3d Cir. 2011), for example, the petitioners asserted that "the United States is bound by the IACHR's finding that removing lawful permanent residents without giving them an opportunity for a meaningful hearing would violate numerous articles of the [American Declaration]." *Id.* at 493. The Third Circuit disagreed, holding that "the language of the OAS Charter and of the IACHR's governing statute indicates that IACHR's decisions are not binding on the United States." *Id.* In so holding, the Third Circuit looked to the Seventh Circuit's decision in *Garza*, which likewise held that decisions of the IACHR are not binding on U.S. courts:

> Nothing in the OAS Charter suggests an intention that member states will be bound by the Commission's decisions before the American Convention goes into effect. To the contrary, the OAS Charter's reference to the Convention shows that the signatories to the Charter intended to leave for another day any agreement to create an international human rights organization with the power to bind members.

253 F.3d at 925. The American Convention referred to is the American Convention on Human Rights, Nov. 22, 1969, O.A.S.T.S. No. 36, 1144 U.N.T.S. 123, 9 I.L.M. 6739 I.L.M. 673. The United States has signed the Convention, but has not ratified it. *Garza*, 253 F.3d at 925; *see also* American Convention on Human Rights, General Information of the Treaty: B-32, *available at* http://www.oas.org/dil/treaties_B-32_American_ Convention_on_Human_Rights_sign.htm (last visited August 21, 2020). And of course an unratified treaty has no binding effect within the U.S. *Flores-Nova*, 652 F.3d at 494 n.6.

---

Doc. 1 at 22. But the decision in *Medellin* did not turn on the fact that state law was at issue. The petitioner argued that the decision of the ICJ created "a 'binding' obligation *on the state and federal courts* of the United States." 552 U.S. at 504 (emphasis added). The Supreme Court spoke broadly about whether the treaty in question created "binding federal law enforceable in United States courts" (*id.*) and noted that obligations established by self-executing treaties "would be immediately and directly binding on state and federal courts pursuant to the Supremacy Clause" (*id.*). *Medellin* concerns the effect within the U.S. of an international tribunal's decisions – precisely the issue here. Nothing in the case suggests that it is limited to the effect of such decisions on state law.

The Court accordingly concludes that Mr. Mitchell's first argument – that IACHR decisions have binding power within the U.S. because "they are derived directly from the OAS Charter" (Doc. 1 at 20) – is entirely unpersuasive. The OAS Charter is not self-executing, and Congress has passed no statute to implement it. *Medellin*, 552 U.S. at 505. Indeed, every federal court of appeals that has addressed this issue "has concluded that IACHR decisions do not have domestic legal force." *Cardenas v. Stephens*, 820 F.3d 197, 203 (5th Cir. 2016); *see In re Hicks*, 375 F.3d 1237, 1241 n.2 (11th Cir. 2004) ("nor is any finding made by [the IACHR] binding on us"); *Tamayo v. Stephens*, 740 F.3d 991, 997–98 (5th Cir. 2014) (noting "the federal circuit courts that have considered this issue have concluded that IACHR decisions do not create a binding obligation on domestic courts" and denying a stay on that basis); *Roach v. Aiken*, 781 F.2d 379, 381 (4th Cir. 1986) (denying a stay based on IACHR's consideration of defendant's case and expressing doubt that "any future decision of the Commission would be enforceable in the domestic courts of this nation, state and federal").[6]

Mr. Mitchell's second argument – that the IACHR decisions are binding "because they are derived, through the OAS Charter, from the American Declaration, a statement of human rights norms the United States has not only adopted, but helped to draft" (*id.*) – is equally unpersuasive. The American Declaration "is not a treaty." *Flores-Nova*, 652 F.3d at 494. "In the best sense, the American Declaration . . . represents a noble statement of the human rights aspirations of the American States, but creates no binding set of obligations." *Id.*; *see also Igartua v. United States*, 626 F.3d 592, 603 n. 11 (1st Cir. 2010) (holding that the American Declaration "is merely an aspirational document"); *Garza*, 253 F.3d at 923 (same). As a result, the Declaration is not "enforceable domestically." *Flores-Nova*, 652 F.3d at 495.[7]

---

[6] Mr. Mitchell cites various court cases concerning other international tribunals. Doc. 1 at 26-27. But none of these cases concerns the IACHR, and *Medellin* make clear that the question of whether a treaty is self-executing turns on the language and history of the treaty itself. *See* 552 U.S. at 506-07.

[7] Mr. Mitchell acknowledges that the Declaration is non-binding: "The American Declaration is itself a non-binding declaration of human norms[.]" Doc. 1 at 23. He argues, nonetheless, that rights recognized in the Declaration "become binding, enforceable rights

- 9 -

The Seventh Circuit in *Garza* looked also to the IACHR's governing statute, the Statute of the Inter-American Commission on Human Rights. 253 F.3d at 925. The court noted that the statute establishes separate procedures for the IACHR depending on whether the OAS member in question has or has not ratified the American Convention. *Id.* For nations that have not ratified the Convention, like the United States, the statute gives the IACHR the following powers:

> [T]o make *recommendations* to the governments of the states *on the adoption of progressive measures* in favor of human rights *in the framework of their legislation, constitutional provisions and international commitments*, as well as appropriate measures to further observance of those rights; . . .
>
> [T]o *pay particular attention* to the observance of the human rights referred to in [certain provisions of] the American Declaration of the Rights of Man; . . .
>
> [T]o examine communications submitted to it, ... and to *make recommendations* to [the government of any member state not a Party to the Convention], when it finds this appropriate, in order to bring about more effective observance of fundamental human rights . . . .

*Id.* (quoting the Statute of the Inter–American Commission on Human Rights, Arts. 18, 20) (emphasis added). In other words, the Commission acts in an advisory role with respect to the United States. It makes recommendations for human rights improvements, and recommendations "are not binding." *Id.*[8]

In fact, the decision of the IACHR at issue in this motion is phrased as "Conclusions and Recommendations." Doc. 1 at 65. The list of decisions, such as the finding that Mr. Mitchell should be given a new trial, are characterized as "recommendations." *Id.* at 26.

---

when applied in a specific case by the Commission, a treaty-based tribunal specifically empowered to interpret and promote the rights contained in the American Declaration." *Id.* He cites no authority for this assertion, and, as explained in this order, he fails to show that the OAS Charter is self-executing as required by *Medellin*. Moreover, as noted below, the governing OAS statute itself makes clear that the IACHR's role with respect to a member country that has not ratified the America Convention, like the United States, is only to make recommendations.

[8] Consistent with this view, the OAS Charter authorizes the creation of the IACHR "to promote the observance and protection of human rights and to serve as a *consultative* organ of [OAS] in these matters." OAS Charter (Amended), Feb. 27, 1967, art. 112, 21 U.S.T. 691 (emphasis added).

Mr. Mitchell does not explain how these recommendations can be viewed as binding law for U.S. courts.[9]

In summary, Mr. Mitchell has not come close to showing that decisions of the IACHR on criminal cases pending in U.S. courts are binding as a matter of law on those courts. The Court accordingly will deny his motion and his stay request.

**IT IS ORDERED:**

1. Mr. Mitchell's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, or, in the alternative, for relief under 28 U.S.C. § 2241 (Doc. 1) is **denied**. The Clerk of Court shall enter judgment accordingly and terminate this action.
2. Mr. Mitchell's motion for a stay of execution (Doc. 3) is **denied**.
3. A certificate of appealability is denied. The Court cannot conclude that reasonable jurists would debate the outcome in this order, nor that the issues deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated this 21st day of August, 2020.

David G. Campbell
Senior United States District Judge

---

[9] Mr. Mitchell asserts that IACHR is "a principal organ through which the OAS accomplishes its purpose." Doc. 1 at 19. Even if true, this fact does not make its decisions binding within the United States. The Supreme Court in *Medellin* noted that the ICJ is the "the principal judicial organ of the United Nations," and yet held that its decisions were not binding within this country. 552 U.S. at 499. Mr. Mitchell also cites statements by the United States acknowledging the legitimate role of the IACHR and expressing support for its work. Doc. 1 at 25. But the statements say nothing about the effect of IACHR decisions as a matter of U.S. law, and, as noted in an earlier footnote, there is a clear distinction between treaty obligations that bind the U.S. as a matter of international law and treaty obligations that have the force and effect of law in this country's courts. *Medellin*, 552 U.S. at 504.